UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESSICA BUTRYM,

               Plaintiff,

     -v-                          1:20-CV-292

CHRISTINE SARSICK,
Assistant Transportation
Supervisor, CHRISTINE
MAZURE, Head Bus Driver,
JOSEPH CZUB,
Transportation Supervisor,
MICHAEL NICKSON, Human
Resource Director,
BURNT HILLS-BALLSTON
LAKE CENTRAL SCHOOL
DISTRICT, BOARD OF
EDUCATION, DON MARSHALL,
School Board of Education,
DAVID VERSUCKI, School
Board of Education, JOHN
BLOWERS, School Board of
Education, JENNIFER LONGTIN,
School Board of Education,
LISA MORSE, School Board of
Education, LAKSHMI NAGARAJAN,
School Board of Education,
PATRICK ZIEGLER, School
Board of Education, PATRICK
MCGRATH, Superintendent of
Schools, CHRISTOPHER ABDOO,
Assistant Superintendent for Support
Services,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| JESSICA BUTRYM<br>Plaintiff, Pro Se<br>PO Box 55<br>Burnt Hills, NY 12027 | |
| THE LAW OFFICE OF<br>   ANTHONY J. BROCK<br>Attorneys for Defendants<br>253 New Road<br>Nassau, NY 12123 | ANTHONY J. BROCK, ESQ. |

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On March 13, 2020, *pro se* plaintiff Jessica Butrym ("Butrym" or "plaintiff"), a former employee of the Burnt Hills-Ballston Lake Central School District (the "School District"), filed this action against defendants Christine Sarsick ("Sarsick"), Christine Mazure ("Mazure"), Joseph Czub ("Czub"), and Michael Nickson ("Nickson") alleging violations of the Americans with Disabilities Act ("ADA").  Dkt. No. 1.

On December 14, 2020, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Butrym's complaint.  Dkt. No. 14. According to defendants, plaintiff had improperly sued various individual defendants rather than the School District itself and, in any event, had failed to plausibly allege a qualifying disability under the ADA.  *Id*.

On January 4, 2021, Butrym opposed defendants' motion to dismiss and cross-moved for leave to amend her complaint. Dkt. No. 15. However, because plaintiff was at that time[1] still entitled to amend her complaint as of right, the Court directed the Clerk to accept plaintiff's proposed amended pleading for filing and to terminate defendants' then-pending motion to dismiss. *See* Dkt. No. 20. The Clerk docketed plaintiff's amended complaint as the operative pleading on February 3, 2021. Dkt. No. 22.

Butrym's amended complaint alleges that Sarsick, Mazure, Czub, and Nickson as well as defendants Don Marshall ("Marshall"), David Versucki ("Versucki"), John Blowers ("Blowers"), Jennifer Longtin ("Longtin"), Lisa Morse ("Morse"), Lakshmi Nagarajan ("Nagarajan"), Patrick Ziegler ("Ziegler"), Patrick McGrath ("McGrath"), Christopher Abdoo ("Abdoo"), the School District, and the School District's Board of Education (the "Board of Education") violated her rights under the ADA when they failed to accommodate her multiple disabilities and terminated her employment.[2] *Id*.

On March 22, 2021, Sarsick, Mazure, Czub, Nickson, Marshall, Versucki, Blowers, Longtin, Morse, Nagarajan, Ziegler, McGrath, and Abdoo (the

---

[1] Under the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within 21 days after the filing of a 12(b) motion to dismiss. FED. R. CIV. P. 15(a)(1).

[2] The Court's docket does not identify the School District and the Board of Education as separate defendants. However, plaintiff's amended pleading suggests that she intended to sue both entities. *See* Dkt. No. 22 at 10. Accordingly, the Clerk of the Court will be directed to amend the caption to include the School District as a named defendant.

"individual defendants") as well as the School District and the Board of Education moved under Rule 12(b)(6) to dismiss Butrym's amended complaint. Dkt. No. 29. According to defendants' renewed motion to dismiss, plaintiff has again failed to allege any plausible ADA claims. *Id.*

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. BACKGROUND

The following facts are taken from Butrym's amended complaint and attached exhibits and will be assumed true for the limited purpose of resolving defendants' motion to dismiss.

On September 9, 2018, the School District hired Butrym as a substitute school bus monitor. Ex. 1 to Am. Compl. ¶ 2. According to plaintiff, she informed the School District on multiple different occasions that she suffers from anxiety, OCD [obsessive-compulsive disorder], and high-functioning autism. *Id.*; *see also* Am. Compl. ¶¶ 4, 8.

On November 12, 2018, the School District hired non-party Megan Quinn ("Quinn") as a substitute school bus driver. Ex. 1 to Am. Compl. ¶ 3. Plaintiff alleges that she and Quinn went to high school together, that Quinn knew about plaintiff's disabilities, and that Quinn had "threatened" her in the past. *Id.*

Once Quinn started her job at the School District, Butrym alleges she would "always stare" at plaintiff and "give [her] looks of disgust." Ex. 1 to Am. Compl. ¶ 3; *see also* Am. Compl. ¶ 7. Plaintiff also alleges that Quinn drove dangerously, ate peanuts on the bus, and treated the students poorly. Am. Compl. ¶ 5. Plaintiff alleges that she complained about Quinn's behavior to her supervisors but that they did not investigate it. *Id*. Plaintiff also alleges that she "repeatedly asked to be kept separated from" Quinn because it "aggravated [her] anxiety." Ex. 1 to Am. Compl. ¶ 5.

Beginning on February 25, 2019, the School District assigned Quinn to drive "the transport bus, which transports faculty between the different schools." Ex. 1 to Am. Compl. ¶ 5. According to plaintiff, she had to ride this transport bus every day—which meant she was forced to deal with Quinn every day. *Id*. Plaintiff alleges that she asked to walk between the schools so that she could avoid interacting with Quinn, but that Czub, the Director of Transportation, put a stop to that. *Id*. As a result, plaintiff alleges that she was forced to ride the bus with Quinn "32 horrible times." Am. Compl. ¶ 13.

On March 25, 2019, Butrym told Mazure, a supervisor, that riding a bus driven by Quinn every day "was aggravating [her] anxiety to the point it was making [her] physically sick." Ex. 1 to Am. Compl. ¶ 6. Mazure passed the message along to Sarsick, another supervisor, and Czub, who asked to speak

with plaintiff immediately after work. *Id*. Plaintiff requested a change in the date or time of the meeting, but defendants refused. *Id*.

The meeting with Sarsick and Czub occurred after work that day. Ex. 1 to Am. Compl. ¶ 7. During the meeting with these supervisors, Butrym "felt uncomfortable and asked twice to go home as the meeting was aggravating [her] anxiety." *Id*. Defendants denied the request, which made plaintiff "feel trapped." *Id*. When Czub mentioned that plaintiff might not have been fit to do her job as substitute school bus monitor, she became upset and "left to get [herself] together." *Id*. Thereafter, Czub texted plaintiff to tell her she was being terminated for her "health and well-being." *Id*. Plaintiff seeks $90,000 in damages and reinstatement to her position. *Id*. ¶ 6.

## III. **LEGAL STANDARD**

"To survive a Rule 12(b)(6) motion to dismiss, the factual allegations must be enough to raise a right to relief above the speculative level." *Ginsburg v. City of Ithaca*, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (cleaned up). "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." *Id*. "When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." *United States v. Bedi*, 318 F. Supp. 3d 561, 564–65 (citation omitted). "In making this determination, a court generally confines

itself to the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" *Bedi*, 318 F. Supp. 3d at 564–65 (quoting *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016)).

## IV.  DISCUSSION

Because Butrym is proceeding *pro se*, her complaint, "however inartfully pleaded, must be held to less stringent standards than a formal pleading drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (cleaned up).  As the Second Circuit has repeatedly instructed, a complaint filed *pro se* "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).  "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Ahlers*, 684 F.3d at 60 (quoting *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008)).

Construed in accordance with this Second Circuit guidance, Butrym's amended complaint alleges that defendants violated the ADA when they (1) failed to accommodate her anxiety and other disabilities by refusing to separate her from Quinn, (2) which created a hostile work environment that persisted until they later (3) discriminated against her on the basis of her

disability by terminating her employment, (4) in retaliation for requesting the accommodation in the first place.[3]

Defendants contend that Butrym's amended complaint must be dismissed because it "fails to allege a medical diagnosis that was provided to the Defendants alerting them that the Plaintiff did in fact suffer from a disability as [that] term is defined by the Act." Defs.' Mem., Dkt. No. 29-2 at 6.[4] Alternatively, defendants argue that plaintiff's "request not to work with another co-worker in the same department cannot reasonably be considered a reasonable accommodation." *Id.* at 7.

In opposition, Butrym contends that she informed the defendants about her disabilities during her initial interview and again in a "physical hand written note" in March of 2019. Pl.'s Opp'n, Dkt. No. 30 ¶ 5. Plaintiff also argues that there are "104 transportation staff at the bus garage," so asking "not to be paired with that one employee" in particular; *i.e.*, Quinn, is not an unreasonable request. *Id.* ¶ 9.

Generally speaking, the ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are

---

[3] Plaintiff's original complaint checked boxes alleging "retaliation," a "failure to employ," and a "denial of participation in public service or program." Dkt. No. 1 at 3. Plaintiff's amended complaint also uses the word "libel" in multiple places. Dkt. No. 22 at 13.

[4] Pagination corresponds to CM/ECF.

the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).

### A. <u>Individual Liability under the ADA</u>[5]

As an initial matter, however, the individual defendants must be dismissed because the ADA does not provide for individual liability in the employment context. *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (per curiam); *see also Murray v. Tanea*, 357 F. Supp. 3d 226, 230 (W.D.N.Y. 2019) ("Many cases from this and other circuits have held that individuals cannot be held personally liable for damages under the ADA, regardless of which title of the ADA is at issue.").

Although it is a plaintiff's supervisors and/or co-workers who are directly engaged in the misconduct about which the plaintiff might complain, it is the employer itself that would bear any eventual legal responsibility under the ADA. Accordingly, the ADA claims against Sarsick, Mazure, Czub, Nickson, Marshall, Versucki, Blowers, Longtin, Morse, Nagarajan, Ziegler, McGrath, and Abdoo must be dismissed.

---

[5] Defendants' counsel has also submitted affidavits from the individual defendants in which they attest that they are not "employers" within the meaning of the ADA. Dkt. Nos. 29-3–29-10. Because defendants have not explained how this extraneous evidence can properly be considered on a 12(b)(6) motion to dismiss, the Court excludes them for the purpose of resolving this motion.

## B. <u>Discrimination & Accommodation under the ADA</u>

Butrym's amended complaint alleges that defendants repeatedly failed to accommodate her request to avoid interacting with Quinn because it greatly exacerbated the physical symptoms of her anxiety. Plaintiff alleges that when she complained about this issue to Mazure, Czub terminated her employment.

To make out a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).[6] A failure-to-accommodate claim considers the same first three factors, but for the fourth factor the question is whether the employer has refused to make a reasonable accommodation. *Id*.

Under the ADA, a "disability" is defined as any "physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). However, "[n]ot every impairment is a 'disability'

---

[6] On a motion to dismiss, the elements of a plaintiff's prima facie case are not treated as an evidentiary burden but are useful as an "an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Sosa v. N.Y. City Dep't of Educ.*, 368 F. Supp. 3d 489, 495 (E.D.N.Y. 2019) (citation omitted).

within the meaning of the ADA." *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005). Instead, there are two requirements: (1) the impairment must limit a "major life activity" and (2) the limitation must be "substantial." *Id*.

As to the first requirement, major life activities include core physical functions like walking, standing, lifting, and other common activities such as reading, concentrating, and working. 42 U.S.C. § 12102(2)(A). As to the second, an impairment qualifies as a disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(ii).

In 2008, Congress amended the ADA "to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020). Even so, it remains the case that "[n]ot every impairment that affects an individual's major life activities is a *substantially* limiting impairment." *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (cleaned up). As the Second Circuit has explained, "in assessing whether a plaintiff has a disability, [courts] have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Id*.

Upon review, Butrym's failure-to-accommodate claim survives pre-answer dismissal. "At the motion to dismiss stage, the [defendant] bears the weighty

burden of showing that the fact-intensive inquiry prerequisite to a finding of reasonable accommodation falls completely in its favor." *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015) (citation omitted).

Defendants have not carried this burden. Butrym's amended complaint alleges that she informed various supervisors at the School District on multiple occasions that she suffers from anxiety, OCD, and high-functioning autism. *See* Ex. 1 to Am. Compl. ¶ 2; *see also* Am. Compl. ¶¶ 4, 8. Plaintiff alleges that she "repeatedly asked to be kept separated from" Quinn because it "aggravated [her] anxiety" to the point that she became "physically sick." Ex. 1 to Am. Compl. ¶¶ 5–6.

Butrym further alleges that she complained about Quinn to her supervisors, who failed to take action. Ex. 1 to Am. Compl. ¶¶ 5–6. When plaintiff tried avoiding Quinn by walking between schools, she alleges that Czub, the Director of Transportation, made her stop. *Id.* In short, plaintiff has plausibly alleged that she requested from her employer (and her employer refused to provide) a limited accommodation that would ameliorate the physical symptoms of her anxiety, which interfered with her ability to

work.  Accordingly, plaintiff has plausibly alleged a failure to accommodate under the ADA.[7]

Upon review, Butrym's employment discrimination claim also survives pre-answer dismissal.  Plaintiff alleges that on March 25, 2019, she again told Mazure, a supervisor, that riding a bus driven by Quinn every day "was aggravating [her] anxiety to the point it was making [her] physically sick."  Ex. 1 to Am. Compl. ¶ 6.  Plaintiff later met with Sarsick and Czub about this problem, who then explicitly told plaintiff she was being fired for her "health and well-being."  *Id.* ¶ 7.  In short, plaintiff has plausibly alleged that defendants terminated her because of her disability.

## C. <u>Hostile Work Environment under the ADA</u>

"Because the ADA echoes and expressly refers to Title VII, and because the two statutes have the same purpose—the prohibition of illegal discrimination in employment—it follows that disabled Americans should be able to assert hostile work environment claims under the ADA."  *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 74 (2d Cir. 2019) (Hall, J.) (cleaned up).

---

[7] Notably, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  *Woolf*, 949 F.3d at 95 (affirming grant of summary judgment against plaintiff who alleged disability from migraines exacerbated by job related stress from supervisors' criticisms).  Courts elsewhere in this Circuit have applied this rule to find that the mere inability to work with a particular co-worker or supervisor (as opposed to a limitation in the ability to work more generally) is often insufficient to plausibly allege a failure to accommodate.  *Shields v. N.Y.C. Health & Hosps. Corp.*, 489 F. Supp. 3d 155, 164 (E.D.N.Y. 2020) (dismissing failure-to-accommodate claim where plaintiff alleges "only that his purported disabilities prevented him from working with Ms. Antrobus and Ms. Lewis").  However, the Court is reluctant to reach this conclusion at the pleadings stage, especially where, as here, the plaintiff is *pro se*.

To make out a hostile work environment claim, a plaintiff must show that (1) the harassment was sufficiently severe or pervasive to alter the conditions of her employment; and (2) a specific basis exists for imputing the objectionable conduct to the employer. *Fox*, 918 F.3d at 74.

"Although the victim must subjectively perceive the conduct as abusive, the misconduct shown also must be severe or pervasive enough to create an objectively hostile or abusive work environment." *Fox*, 918 F.3d at 74 (cleaned up). "A plaintiff alleging a hostile work environment claim under the ADA, therefore, must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of her working environment." *Id*.

To the extent that Butrym's amended complaint might be construed to allege that being required to ride the transport bus with Quinn caused her to suffer a hostile working environment, that claim must be dismissed. Plaintiff no doubt *subjectively* perceived this working arrangement to be abusive or pervasive, but the amended complaint does not plausibly allege misconduct or behavior that amounts to an *objectively* hostile or abusive working environment. Accordingly, this claim will be dismissed.

### D. <u>Retaliation under the ADA</u>

Broadly construed, Butrym's amended complaint alleges that she complained to Mazure, a supervisor, that riding the school bus with Quinn every day aggravated her anxiety to the point of physical sickness. The complaint alleges that Mazure passed this message along to Sarsick and Czub, who held a meeting with plaintiff and then fired her. According to the amended complaint, Czub told plaintiff she was being terminated for her "health and well-being."

To make out a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity. *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015).

Upon review, Butrym's ADA retaliation claim survives pre-answer dismissal. "It is well established that seeking a reasonable accommodation for a disability constitutes protected activity." *Laface v. Eastern Suffolk Boces*, 349 F. Supp. 3d 126, 149 (E.D.N.Y. 2018) (cleaned up). And even if the disability at issue is not one within the meaning of the ADA, a request for an accommodation can still qualify as protected activity if it is made in good faith. *Id*.

Butrym's amended complaint alleges that she engaged in good-faith protected activity when she told Mazure, a supervisor, that riding a bus driven by Quinn every day "was aggravating [her] anxiety to the point it was making [her] physically sick." Ex. 1 to Am. Compl. ¶ 6.  Plaintiff met with Sarsick and Czub shortly afterward, who explicitly told her she was being fired for her "health and well-being." *Id.* ¶ 7.  In short, plaintiff has plausibly alleged that defendants terminated her because she sought an accommodation that would permit her to avoid interacting with Quinn.

### E. State law claims

Although defendants identified some possible state law claims lurking in Butrym's amended complaint (*e.g.*, defamation), the Court has not construed plaintiff's operative pleading to include any plausible claims other than the four ADA causes of action identified *supra*.  To the extent plaintiff might desire to add one or more state (or federal) law claims, she must seek leave to amend her complaint in accordance with the Federal Rules of Civil Procedure and this District's Local Rules.

## V. CONCLUSION

Therefore, it is

ORDERED that

1. Defendants' motion to dismiss is GRANTED in part and DENIED in part;

2. The ADA claims against Sarsick, Mazure, Czub, Nickson, Marshall, Versucki, Blowers, Longtin, Morse, Nagarajan, Ziegler, McGrath, and Abdoo are DISMISSED;

2. Sarsick, Mazure, Czub, Nickson, Marshall, Versucki, Blowers, Longtin, Morse, Nagarajan, Ziegler, McGrath, and Abdoo are TERMINATED as defendants in this action;

3. The Clerk of the Court is directed to add the School District as a named defendant in this action;

4. Butrym's ADA claim alleging a hostile work environment against the School District and the Board of Education is DISMISSED;

5. Butrym's ADA claims alleging a failure to accommodate, discrimination, and retaliation against the School District and the Board of Education survive dismissal; and

6. The School District and the Board of Education shall file an answer to those claims on or before May 28, 2021.

The Clerk of the Court is directed to terminate the pending motions (Dkt. Nos. 14, 15, and 29).

IT IS SO ORDERED.

Dated: May 13, 2021
       Utica, New York.

_____
David N. Hurd
U.S. District Judge