UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JESSICA BUTRYM,

              Plaintiff,

        -v-                 1:20-CV-292

BURNT HILLS-BALLSTON
LAKE CENTRAL SCHOOL
DISTRICT, BOARD OF
EDUCATION, and BURNT
HILLS-BALLSTON LAKE
CENTRAL SCHOOL DISTRICT,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:              OF COUNSEL:

JESSICA BUTRYM
Plaintiff, Pro Se
PO Box 55
Burnt Hills, NY 12027

THE LAW OFFICE OF        ANTHONY J. BROCK, ESQ.
   ANTHONY J. BROCK
Attorneys for Defendants
253 New Road
Nassau, NY 12123

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On March 13, 2020, *pro se* plaintiff Jessica Butrym ("Butrym" or "plaintiff"), a former employee of the Burnt Hills-Ballston Lake Central School District (the "School District"), filed this action against defendants Christine Sarsick ("Sarsick"), Christine Mazure ("Mazure"), Joseph Czub ("Czub"), and Michael Nickson ("Nickson") alleging violations of the Americans with Disabilities Act ("ADA").  Dkt. No. 1.

On December 14, 2020, defendants moved under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss the complaint.  Dkt. No. 14.  According to them, Butrym had improperly sued her former supervisors rather than the School District itself and, in any event, had failed to plausibly allege any qualifying disability within the meaning of the ADA.  *Id.*

On January 4, 2021, Butrym opposed defendants' motion to dismiss and cross-moved for leave to amend her complaint.  Dkt. No. 15.  Because plaintiff was still entitled to amend her complaint as of right, the Clerk was directed to (1) accept plaintiff's proposed amended pleading for filing; (2) docket the amended pleading as the operative complaint; and (3) terminate defendants' then-pending motion to dismiss as moot.  *See* Dkt. No. 20.  The Clerk acted accordingly.  Dkt. No. 22.

Butrym's amended complaint alleged that Sarsick, Mazure, Czub, and Nickson as well as defendants Don Marshall ("Marshall"), David Versucki ("Versucki"), John Blowers ("Blowers"), Jennifer Longtin ("Longtin"), Lisa Morse ("Morse"), Lakshmi Nagarajan ("Nagarajan"), Patrick Ziegler ("Ziegler"), Patrick McGrath ("McGrath"), Christopher Abdoo ("Abdoo"), the School District, and the Board of Education violated her rights under the ADA when they failed to accommodate her disabilities and terminated her employment as a school bus monitor.[1]  *Id.*

On March 22, 2021, Sarsick, Mazure, Czub, Nickson, Marshall, Versucki, Blowers, Longtin, Morse, Nagarajan, Ziegler, McGrath, and Abdoo (the "individual defendants") as well as the School District and the Board of Education moved under Rule 12(b)(6) to dismiss Butrym's amended complaint.  Dkt. No. 29.  According to the renewed motion to dismiss, plaintiff had once again failed to allege any plausible ADA claims.  *Id.*

On May 13, 2021, defendants' motion to dismiss was granted in part and denied in part.  *Butrym v. Sarsick*, 2021 WL 1927073 (N.D.N.Y. May 13, 2021).  After broadly construing the amended complaint in light of Butrym's status as a *pro se* litigant, it was determined that plaintiff had alleged four

---

[1]  The docket did not identify the School District and the Board of Education as separate defendants.  However, plaintiff's amended pleading suggested that she intended to sue both entities.  *See* Dkt. No. 22 at 10.  Therefore, the Clerk of the Court was directed to amend the caption to include the School District as a named defendant.

disability-related claims: (1) a failure to accommodate; (2) a hostile work environment; (3) disability discrimination; and (4) retaliation. *Id*. at *3.

Those claims were dismissed against the individual defendants, all of whom were alleged to be Butrym's supervisors and/or co-workers. As explained, "the ADA does not provide for individual liability in the employment context." *Butrym*, 2021 WL 1927073, at *3. The hostile work environment claim was also dismissed because plaintiff had failed to "plausibly allege misconduct or behavior that amounts to an *objectively* hostile or abusive working environment." *Id*. at *6.

However, it was concluded that Butrym had plausibly alleged ADA claims for disability discrimination, a failure to accommodate, and retaliation against the School District and the Board of Education. *Butrym*, 2021 WL 1927073, at *4, *7. As her pleading was understood, plaintiff alleged that defendants "repeatedly failed to accommodate her request to avoid interacting with [a certain co-worker] because it greatly exacerbated the physical symptoms of her anxiety" and "that when she complained about this issue to [the relevant supervisor], [a decision-maker] terminated her employment" as a school bus monitor. *Id*. at *4.

It was alternatively concluded that Butrym's complaints to supervisors about this particular co-worker could be construed as a request for an accommodation under the ADA that resulted in the retaliatory termination of

her employment.  *Butrym*, 2021 WL 1927073, at *6.  Thereafter, the parties completed discovery into plaintiff's three remaining claims.  *See generally* Dkt. Nos. 35–56.[2]

On February 2, 2022, the remaining named defendants; *i.e.*, the School District and the Board of Education (collectively the "School District" or "defendants"), moved under Rule 56 for summary judgment.  Dkt. No. 57.

The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.  <u>BACKGROUND</u>

On September 9, 2018, the School District hired Butrym as a substitute school bus monitor.  Defs.' Local Rule 56.1(a) Statement ("Defs.' Facts"), Dkt. No. 57-1 ¶ 1.  As part of the employment process, plaintiff completed and passed a written exam and a physical fitness test.  *Id.* ¶ 3.

On a School District hiring form entitled "application for examination or employment," Butrym did not identify herself as laboring under any specific "disability."  Defs.' Facts ¶ 2.  As plaintiff explained at her deposition, she did not need to request any disability accommodation when she was hired because at that time she did not require one to perform her work as a school

---

[2] On September 17, 2021, plaintiff filed a letter motion "requesting Summary Judgment."  Dkt. No. 46.  That request was denied without prejudice because, *inter alia*, plaintiff had failed to comply with the relevant procedural rules governing summary judgment.  Dkt. No. 56.

bus monitor.  Pl.'s Tr., Dkt. No. 57-3, 22:3–11.[3]  Notably, however, plaintiff

contends that defendants were on notice of her various disabilities, which

included anxiety, OCD, and autism.  *See, e.g.*, "Correct" Nickson Aff., Dkt. No.

58-2 at 1–2; "Correct" Mazur Aff., Dkt. No. 58-3 at 1.

On January 25, 2019, Butrym first complained to defendants about the

behavior of non-party Megan Quinn ("Quinn"), a substitute school bus driver

also employed by the School District.  Defs.' Facts ¶ 10.  Among other things,

plaintiff complained that Quinn had stared at her, parked next to her, given

her dirty looks, and even crashed a bus.  *Id.* ¶ 11.  According to plaintiff's

responsive filings, she has "photos and video of the harassment."  "Correct"

Mazur Aff. at 1.[4]

Butrym claims that she advised "Mazure and others" that "riding the bus

with [ ] Quinn was aggravating [her] anxiety or making [her] feel physically

sick."  "Correct" Mazur Aff. at 4.  Plaintiff sought from defendants a

workplace accommodation that would allow her to avoid Quinn.  *See, e.g.*,

"Correct" Sarsick Aff. at 3 (explaining "WE WOULD NOT BE IN THIS

---

[3]  Pagination corresponds with CM/ECF.

[4]  In support of this assertion, plaintiff has cited an exhibit entitled "not [on] a bus harassment one" and "not [on] a bus harassment two."  Those two exhibits are attached to her opposition filings.  Dkt. Nos. 58-14 & 58-15.  Both photos depict a group of people marching in a parade.  The photographer is approximately twenty yards away from the group.  Each photograph includes a handwritten arrow pointing to one of the female group members with the handwritten label "Megan Quinn."  It is assumed for now that these two photographs depict Quinn, the alleged harasser.  Even so, they do not at all support plaintiff's alleged assertion of fact; *i.e.*, that Quinn was harassing plaintiff or acting improperly at work.

MESS!" if defendants had "honor[ed] [her] request to not work with [ ] Quinn").

In response to this complaint, Mazure and Sarsick examined payroll records and determined that Butrym had been assigned to ride a school bus driven by Quinn on December 20 and 21, 2018. Defs.' Facts ¶ 12. However, after examining the security camera footage from the school bus for both of those days, Mazure and Sarsick concluded that plaintiff's complaints about Quinn were without merit. *Id*. ¶¶ 12–13. According to defendants, this investigation also revealed that plaintiff was not properly performing her duties as a school bus monitor. *Id*. ¶ 13.

On March 7, 2019, Butrym rode on the School District's so-called "transportation bus," a designated bus used to shuttle employees between various locations.[5] *See* Defs.' Facts ¶ 15. Quinn drove the bus that day. *Id*. Plaintiff complained to her supervisors about Quinn's behavior during that trip. *Id*. A renewed investigation into plaintiff's latest complaint led supervisors to review the bus security footage, which in their view once again "showed Plaintiff not doing her job and that her complaints about [ ] Quinn were unfounded." *Id*.

---

[5] Defendants assert that this only occurred on a single occasion. Defs.' Facts ¶ 16. However, plaintiff contends that it happened many more times. "Correct" Mazur Aff. at 1–2; "Correct" Sarsick Aff., Dkt. No. 58-4 at 2.

On March 25, 2019, Butrym was called to a meeting with Czub and Sarsick to discuss her job performance.  Defs.' Facts ¶ 17.  Plaintiff denies that she was called into this meeting; instead, plaintiff claims that she went to Mazur and Sarsick herself to lodge another complaint about Quinn.  "Correct" Mazur Aff. at 2.  According to plaintiff, Quinn's harassment extended beyond work—"it's EVERYWHERE she sees me."  *Id.*

In any event, both parties agree that a meeting occurred.  During the meeting, Butrym's supervisors discussed with her "a number of concerns regarding her employment," including that "she refused to work on certain busses [*sic*] including busses [*sic*] driven by drivers other than [ ] Quinn, that some bus drivers complained that she was not always on task, that she failed to show up for work without calling the [School District] on several occasions, she would supervise a limited number of children on a bus rather than the entire bus, she gave gifts to children, and she was unprofessional and disrespectful toward bus monitor Mary LeClair."  Defs.' Facts ¶ 17.[6]

Defendants assert that Butrym "became upset," walked out of the meeting, and then continued walking until she was off the School District's property entirely.  Defs.' Facts ¶¶ 19–20.  Plaintiff was thereafter notified by defendants that her employment had been terminated "due to her poor work

---

[6] According to plaintiff, at least some of these alleged improprieties are not against defendants' rules.  "Correct" Mazur Aff. at 2 (claiming that holiday gift giving is "NOT A RULE!").

performance, her inability to discuss her deficiencies in her work performance and for walking off the job on March 25, 2019." *Id*. ¶¶ 21–22. According to plaintiff, she left the meeting because Czub "yelled" at her. "Correct" Nickson Aff. at 2. As she previously alleged in her amended complaint, plaintiff also asserts that Czub texted plaintiff to inform her she was being terminated for her "health and well-being." *See, e.g.*, Dkt. No. 58-5 ¶ 16. Plaintiff denies being responsible for any "poor work performance" and contends Czub did not have the authority to terminate her employment. "Correct" Nickson Aff. at 2.

## III. <u>LEGAL STANDARD</u>

The entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is material for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In assessing whether there are any genuine disputes of material fact, "a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party." *Ward v. Stewart*, 286 F. Supp. 3d 321, 327 (N.D.N.Y. 2017) (citation omitted). Summary judgment is inappropriate where a "review of the record reveals sufficient evidence for a

rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted).

## IV.  DISCUSSION

### A.  Plaintiff's Pro Se Status

Butrym is still proceeding *pro se*.  Accordingly, her filings in opposition to summary judgment must be "liberally construed" and "held to less stringent standards than a formal pleading drafted by lawyers." *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (cleaned up); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (observing that courts must liberally construe pleadings and briefs submitted by *pro se* litigants in a way that raises the strongest arguments they suggest).

### B.  Local Rules Governing Summary Judgment

Importantly, however, this lenient policy toward unrepresented litigants has some outer bounds.  *See, e.g.*, *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006).  For instance, while a court should not harshly apply byzantine technical rules against an unrepresented litigant, *pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Id*. (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).  Nor does it "otherwise relieve [an unrepresented party] from the usual requirements of summary judgment." *Morrison v. Dr. Pepper Snapple Grp.*, 916 F. Supp. 2d 372, 374 (W.D.N.Y. 2013) (citation omitted).

Defendants contend that the facts set out in their Statement of Material Facts should be deemed admitted because Butrym failed to file a response to this document in accordance with the relevant Local Rules.  Defs.' Reply, Dkt. No. 59-1 at 3.  According to defendants, plaintiff's "opposition papers are replete with conclusory allegations with no support in the record."  *Id.*

Under this District's Local Rules, the party opposing summary judgment is obligated to file a response to the movant's Statement of Material Facts that "mirror[s] the movant's Statement . . . by admitting and/or denying each of the movant's assertions" and, in the case of a denial, setting forth "a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 56.1(b) (2021 ed.).  Where, as here, the non-movant is a *pro se* litigant, counsel for the movant must "send a notice to the pro se litigant" cautioning them that, *inter alia*, "the pro se litigant's failure to respond to the motion may result in the Court entering a judgment" against them.  *Id.* at 56.2.

Defendants complied with this requirement.  They served Butrym with a copy of this District's form notice to *pro se* litigants entitled "notification of the consequences of failing to respond to a summary judgment motion."  Dkt. No. 57-11.  As relevant here, this form notice warns the non-movant that a "proper response" to summary judgment requires, *inter alia*, the party to submit "[a] response to the defendants' statement of material facts that admits and/or denies each of the defendants' assertions in matching

numbered paragraphs, and that supports each denial with citations to record evidence." *Id*. (explanatory footnotes omitted).

A review of Butrym's opposition submissions reveals that she has not properly complied with this requirement. *See generally* Dkt. No. 58. Instead, plaintiff has offered so-called "correct" versions of three affidavits filed by defendants in support of their summary judgment motion along with a document that includes additional facts plaintiff believes to be in dispute. Dkt. Nos. 58-2–58-5.

Butrym's "corrected" versions of these three affidavits include handwritten paragraphs in which she purports to deny certain assertions of fact offered by defendants. Some but not all of these assertions are supported with references to "exhibits" and other documents plaintiff has filed in opposition to summary judgment.

In light of Butrym's *pro se* status, these "corrected" affidavits will be examined along with plaintiff's other filings to determine whether some or all of plaintiff's denials are supported with any truly conflicting evidence in the fact record. Most of the relevant conflicts have already been noted *supra* in the Background Section of this opinion.

Butrym has also filed an unpermitted sur-reply in which she includes additional assertions of fact. Dkt. No. 60. Notably, however, although in this sur-reply and in the "corrected" affidavits plaintiff "disputes" the timing and

in many cases the substance of conversations or actions attributed to Quinn, Czub, Mazur, Sarsick, and other supervisors, most of these disputed facts are not really "material" in the summary judgment sense, *i.e.*, their resolution in plaintiff's favor by a reasonable jury would not impact the legal analysis under the governing law. *Anderson*, 477 U.S. at 248.

## C.  Defendants' Motion for Summary Judgment

In *Butrym*, plaintiff's amended complaint was broadly construed and it was concluded that she had plausibly alleged ADA claims for disability discrimination, failure to accommodate, and retaliation against the School District and the Board of Education.  2021 WL 1927073, at *7.  Defendants have moved for summary judgment on these remaining claims.

### 1.  Discrimination & Accommodation under the ADA

To make out a *prima facie* case of employment discrimination under the ADA, a plaintiff must show that (1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (4) she suffered an adverse employment action because of her disability.  *Woolf v. Strada*, 949 F.3d 89, 93 (2d Cir. 2020).[7]  A failure-to-accommodate claim under the ADA relies on the first

---

[7]  Unlike Title VII, the plaintiff must show that her disability was the "but-for" cause of the adverse action.  *Natofsky v. City of N.Y.*, 921 F.3d 337, 349 (2d Cir. 2019).

three factors, but substitutes the fourth factor with the question of whether the employer has refused to make a reasonable accommodation.  *Id*.

Upon review, defendants are entitled to summary judgment on both of these claims because Butrym has failed to establish a triable issue of fact regarding whether she was "disabled."  Generally speaking, the ADA defines a "disability" as any "physical or mental impairment that substantially limits one or more major life activities."  42 U.S.C. § 12102(1)(A).  Importantly, however, "[n]ot every impairment is a 'disability' within the meaning of the ADA."  *Capobianco v. City of N.Y.*, 422 F.3d 47, 56 (2d Cir. 2005).  Instead, there are two general qualifications: (1) the impairment must limit a "major life activity" and (2) the limitation must be "substantial."  *Id*.

As to the first requirement, major life activities include physical functions like walking, standing, and lifting as well as other common activities such as reading, concentrating, and working.  42 U.S.C. § 12102(2)(A).  As to the second requirement, a plaintiff's impairment must "substantially limit[ ] the ability of an individual to perform a major life activity as compared to most people in the general population."  29 C.F.R. § 1630.2(j)(ii).

In 2008, Congress amended the text of the ADA "to make clear that the substantial-limitation requirement in the definition of 'disability' is not an exacting one."  *Woolf* 949 F.3d at 94.  Even so, it remains the case that "[n]ot every impairment that affects an individual's major life activities is a

*substantially* limiting impairment." *B.C. v. Mt. Vernon Sch. Dist.*, 837 F.3d 152, 160 (2d Cir. 2016) (cleaned up).  Thus, "in assessing whether a plaintiff has a disability, [courts] have been careful to distinguish impairments which merely *affect* major life activities from those that *substantially limit* those activities." *Id*. (emphases in original).

Viewed in the light most favorable to her, the evidence establishes that Butrym informed her supervisors on multiple occasions that she suffers from anxiety, OCD, and autism.  The evidence further establishes that plaintiff demanded to be kept separate from Quinn, a co-worker who aggravated her anxiety and made her feel physically sick.

But those facts do not establish a "disability" within the meaning of the ADA.  As the Second Circuit recently reiterated, "the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Woolf*, 949 F.3d at 95 (affirming grant of summary judgment against plaintiff who alleged disability from migraines that were exacerbated by job-related stress from supervisors' criticisms).

Courts have applied this general rule to conclude that the inability to work with a particular co-worker or supervisor (as opposed to a limitation in the plaintiff's ability to work more generally or work in a broad range of jobs) does not qualify as a "substantial limitation" on the major life activity of "working." *See, e.g.*, *Shields v. N.Y. City Health & Hosps. Corp.*, 489 F. Supp.

3d 155, 164 (E.D.N.Y. 2020) (dismissing a failure-to-accommodate claim where plaintiff alleged "only that his purported disabilities prevent him from working" with a particular co-worker and a single supervisor); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1062 (7th Cir. 2000) ("Standing alone, a personality conflict between an employee and a supervisor – even one that triggers the employee's depression – is not enough to establish that the employee is disabled, so long as the employee could still perform the job under a different supervisor.")

In *Butrym*, it was noted that this body of ADA caselaw was likely fatal to plaintiff's claims.  2021 WL 1927073, at *5 & n.7.  However, as explained, it was "reluctant to reach this conclusion at the pleadings stage, especially where, as here, the plaintiff is *pro se*."  *Id.* at n.7.  At the time, there remained the possibility that plaintiff, though unrepresented by counsel, might be able to establish in discovery that her impairments were substantially more limiting than her pleading suggested.

Discovery has shown that they are not.  As Butrym herself explained at her deposition:

> Q. And so when you say that you can do the job without a reasonable accommodation, as long as you're not assigned with Megan Quinn, you're saying you don't need any accommodation; correct?
>
> A. Correct.   Her behavior to this day is still an obsession of me.  And as long as that's controlled - -

> you know, it's still going on today so it doesn't
> matter if we're together or not, you know,
> employee-wise.  But going further, it just - - you
> know, she has to be spoken to.
>
> Q.  Okay.  But there's nothing else about the job that
> you can't do, provided Megan Quinn is not assigned
> to the bus you're on?
>
> A.  Correct.  I mean, like again she needs to be told, you
> know, "Stop obsessing with her."

Pl.'s Tr. at 78:7–78:25.

In other words, Butrym's discrimination and accommodation claims do not rest on broad limitations in her ability to "work" that might be attributed to her diagnosed impairments.  *Cf. Weiss v. Cty. of Suffolk*, 416 F. Supp. 3d 208, 214 (E.D.N.Y. 2018) ("It is insufficient for a plaintiff to prove a disability on the basis of a diagnosis alone—that is, not every impairment is a disability.").  Instead, these claims rest on symptoms that arise solely from plaintiff's interactions with Quinn, who was occasionally assigned to her as a co-worker.  Because plaintiff has not shown that these work-induced symptoms "substantially limited [her] ability to work in a class or broad range of jobs, no reasonable factfinder could conclude that [she] has a 'disability' within the meaning of the ADA."  *Woolf*, 949 F.3d at 95.

Even assuming otherwise, Butrym has failed to establish that the termination of her employment by Czub and/or Sarsick was just a pretext for unlawful disability discrimination.  *See McBride v. BIC Consumer Products*

*Mfg. Co., Inc.*, 583 F.3d 92, 96 (2d Cir. 2009); *see also Frantti v. New York*, 414 F. Supp. 3d 257, 285 (N.D.N.Y. 2019) (observing that on summary judgment ADA claims for employment discrimination are analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Defendants' submissions establish Mazure and Sarsick conducted a prompt investigation into Butrym's first complaint about Quinn.  These submissions further establish that defendants concluded plaintiff's complaints were without merit and, in fact, plaintiff was not properly performing her own duties as a school bus monitor.  Plaintiff's second complaint about Quinn led to a second investigation, which again revealed to defendants that plaintiff was "not doing her job" and that her complaints about Quinn's behavior "were unfounded."

The parties agree that these events culminated in a meeting on March 25, 2019.  There, the parties discussed "a number of concerns regarding [plaintiff's] employment," including various things that, in her supervisors' view, justified the termination of her employment.  Although plaintiff denies being guilty of "poor work performance" and insists that at least some of her alleged misconduct (*e.g.*, gift-giving to children) was not against the rules, both parties agree that plaintiff walked out of this meeting and was fired shortly afterward.

Even if it were to resolve those disputed facts in her favor, no reasonable jury could conclude that Butrym's impairments were the but-for cause of this adverse employment action.  A review of plaintiff's deposition transcript reveals that while she denies certain alleged deficiencies in her work performance, she concedes others.  Absent more, no factfinder could return a verdict in plaintiff's favor on this discrimination claim.  *Cf. Canales-Jacobs v. N.Y. State Office of Court Admin.*, 640 F. Supp. 2d 482, 500 (S.D.N.Y. 2009) ("The ADA does not excuse workplace misconduct because the misconduct is related to a disability.").

To the extent Butrym's ADA claim might be construed as a request for an accommodation that involved no contact with Quinn, a single co-worker, that request was unreasonable as matter of law.  *See, e.g.*, *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 579 (3d Cir. 1998) (applying pre-amendment ADA law to conclude that plaintiff's "request to be transferred away from individuals causing him prolonged and inordinate stress" was "unreasonable as a matter of law under the ADA" in terms of an accommodation).

In sum, even viewed in the light most favorable to her and construed liberally in light of her *pro se* status, Butrym has failed to identify evidence from which a reasonable jury could find in her favor on either of these ADA claims.  Accordingly, plaintiff's discrimination and failure-to-accommodate claims must be dismissed.

## 2. **Retaliation**

To make out a *prima facie* case of retaliation under the ADA, a plaintiff must show that (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity.  *See, e.g.*, *Vale v. Great Neck Water Pollution Control Dist.*, 80 F. Supp. 3d 426, 438 (E.D.N.Y. 2015).

Upon review, defendants are also entitled to summary judgment on this claim.  Viewed in the light most favorable to her, a reasonable jury could conclude that Butrym engaged in good-faith protected activity when she complained to her supervisors about how being in Quinn's presence exacerbated the symptoms of plaintiff's anxiety, OCD, and/or autism.  And there is no doubt that the termination of her employment constitutes an "adverse action."  *See, e.g.*, *Campbell v. N.Y. City Transit Auth.*, 93 F. Supp. 3d 148, 176 (E.D.N.Y. 2015) ("Adverse employment action is broader than in the retaliation context that the discrimination context . . . . ").

Even so, Butrym has failed to establish a triable issue of fact on causation.  "A causal connection in retaliation claims can be shown either (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or

(2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 353 (cleaned up).

In *Butrym*, the Court concluded that plaintiff had "plausibly alleged that defendants terminated her because she sought an accommodation that would permit her to avoid interacting with Quinn." 2021 WL 1927073, at *6. This was so because plaintiff had alleged that Sarsick and Czub told her she was being fired for her "health and well-being." *Id*.

But on summary judgment, this isolated reference to Butrym's "health and well-being," absent something more, is insufficient to warrant a trial on this claim. The evidence establishes that plaintiff first complained about Quinn in January of 2019. Thereafter, she remained employed by defendants and did not suffer any adverse consequences as a result of this "protected activity." In fact, the evidence establishes that even after defendants investigated plaintiff's complaint and found it meritless, they took steps to keep the two employees separated from each other going forward.

A few months later, in March of 2019, Butrym and Quinn were again paired up on the "transportation bus" used to shuttle employees around the School District. Defendants contend that this only happened once, while plaintiff insists it happened repeatedly throughout the month of March. Plaintiff's second complaint about Quinn culminated in the March 25 meeting that ended with plaintiff's termination. But the timing of these

various events—most notably, that plaintiff continued working in a retaliation-free environment following her first complaint—undermines any inference that her second, essentially identical complaint about Quinn's alleged behavior bore any causal relationship to her termination.

Even assuming otherwise, Butrym has failed to adduce evidence from which a reasonable jury could conclude that the termination of her employment was a mere pretext for unlawful retaliation. *Campbell*, 93 F. Supp. 3d at 174 (observing that on summary judgment ADA claims for retaliation are analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

As discussed *supra*, defendants have identified legitimate, non-retaliatory reasons for terminating Butrym's employment.  Although plaintiff disputes some of these performance complaints, resolving those disputed facts in her favor would not permit a reasonable jury to conclude that a retaliatory motive was the but-for cause of this adverse employment action.  *See, e.g.*, *Sivio v. Vill. Care Max*, 436 F. Supp. 3d 778, 799 (S.D.N.Y. 2020) (explaining that the ultimate burden of persuasion remains on the plaintiff to prove that the desire to retaliate was the cause of the employer's allegedly wrongful action).

The question of whether a plaintiff has created a triable issue of fact on pretext is a case-specific one that requires an examination of the entire

record to determine whether a jury could return a favorable verdict.  *Sivio*, 436 F. Supp. 3d at 799.  Of course, but-for causation in the retaliation context does not require a plaintiff to prove that retaliation was the "only cause" of an adverse action; rather, the plaintiff only needs to show "that the adverse action would not have occurred in the absence of the retaliatory motive."  *Zann Kwan v. Andalex Grp., LLC*, 737 F.3d 834, 846 (2d Cir. 2013).

However, without affirmative evidence contradicting defendants' claim that Butrym was terminated for poor job performance, and in light of the fact that plaintiff walked out in the middle of the March 25 meeting with her supervisors, the follow-up text message from Czub about plaintiff's "health and well-being," standing alone, does not amount to sufficient evidence from which "a reasonable juror could conclude that the explanations were a pretext for a prohibited reason."  *Zann Kwan*, 737 F.3d at 846.  Accordingly, plaintiff's retaliation claim must also be dismissed.

## V.  CONCLUSION

Butrym's amended complaint plausibly alleged facts sufficient to open the door to discovery into her disability claims.  However, at summary judgment she has failed to marshal evidence from which a reasonable jury could find in her favor on any of her claims.

Therefore, it is

ORDERED that

1. Defendants' motion for summary judgment is GRANTED; and

2. Plaintiff's amended complaint is DISMISSED.

The Clerk of the Court is directed to enter a judgment accordingly and close the case file.

IT IS SO ORDERED.


Dated:  April 13, 2022
          Utica, New York.

David N. Hurd
U.S. District Judge